IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

────────────────────────────────

ARKIL LIONKING ZULU,

                         Plaintiff,        Civil Action No.
                                      9:16-CV-1408 (MAD/DEP)

    v.

JOHNATHAN M. BARNHART, *et al.*,

                         Defendants.

────────────────────────────────

<u>APPEARANCES</u>:                       <u>OF COUNSEL</u>:

<u>FOR PLAINTIFF</u>:

VINDIGNI, BETRO & WALTON PLLC   SCOTT R. SWAYZE, ESQ.
146 Madison Street
Oneida, NY 13421

<u>FOR DEFENDANT</u>:

HON. LETITIA JAMES               MATTHEW P. REED, ESQ.
New York State Attorney General     Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

This is a civil rights action brought by *pro se* plaintiff Arkil LionKing Zulu, a New York State prison inmate, pursuant to 42 U.S.C. § 1983, against five corrections officers stationed at the Marcy Correctional Facility ("Marcy"), located in Marcy, New York. In his complaint, plaintiff alleges that he was assaulted by those corrections officers, in violation of his rights arising under the Eighth Amendment of the U.S. Constitution.

In order to permit the court to resolve the exhaustion defense raised by defendants prior to trial, the assigned district judge referred the matter to me for the purpose of conducting an evidentiary hearing and issuing a report and recommendation addressing the issue. Based upon the evidence adduced at that hearing, I conclude that plaintiff failed to fully exhaust his administrative remedies prior to commencing this action, but recommend that he be excused from the exhaustion requirement. The following represent my recommended findings of fact and conclusions of law.

I.    <u>BACKGROUND</u>[1]

Plaintiff is currently being held in the custody of the New York State

---

[1]    The specific factual findings related to defendants' exhaustion defense are recounted further on in this report. *See* pp. 22-30, *post*.

Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 51-3 at 12. Although he is presently incarcerated elsewhere, plaintiff was confined to Marcy, the Downstate Correctional Facility ("Downstate") located in Fishkill, New York, or the Upstate Correctional Facility ("Upstate"), located in Malone, New York, at the times that are relevant to his claims and defendants' exhaustion defense. Dkt. No. 51-3 at 35; *see also* Dkt. No. 78 at 4-5.

Plaintiff alleges that during the early morning hours of January 18, 2015, while he was washing his hands in a dormitory bathroom at Marcy, defendant Jonathan Barnhart became abruptly hostile towards him. Dkt. No. 51-3 at 14-15, 18; *see* Dkt. No. 1 at 2-3; Dkt. No. 78 at 4. As plaintiff attempted to exit the bathroom, defendant Barnhart ordered plaintiff to stand against the wall. Dkt. No. 51-3 at 15; *see* Dkt. No. 1 at 2-3. When plaintiff asked if defendant Barnhart was speaking to him, the officer responded, "[y]eah, you, get the fuck on the wall." Dkt. No. 51-3 at 15; *see* Dkt. No. 1 at 2-3. Although plaintiff complied with the order, defendant Barnhart radioed for additional assistance. Dkt. No. 51-3 at 15; *see* Dkt. No. 1 at 3.

At that point, defendants D. Leddick, J. Muha, M. Hubal, and Gebo arrived on the scene. Dkt. No. 51-3 at 15-16. When plaintiff asked

3

defendant Barnhart a question, the officer grabbed his hair and slammed his face into the wall twice. Dkt. No. 51-3 at 18; *see* Dkt. No. 1 at 3-4. Plaintiff alleges that while he was being escorted from the bathroom to Marcy's special housing unit ("SHU"), each of the officers assaulted him in some manner. Dkt. No. 51-3 at 18-20, 75; Dkt. No. 1 at 4-5.

Plaintiff was transported to St. Elizabeth's Hospital in Utica, New York, where he received three stitches to each of his left and right eyebrows. Dkt. No. 51-3 at 27, 32, 72, 104; *see also* Dkt. No. 1 at 5. As a result of this incident, plaintiff experienced permanent scarring from the sutures and suffered from approximately three weeks of migraine headaches. Dkt. No. 51-3 at 27-28, 72.

II.    PROCEDURAL HISTORY

This action was commenced on or about November 28, 2016. Dkt. No. 1. Following the close of discovery, on January 9, 2018, defendants moved for the entry of summary judgment dismissing the claims remaining in the action following the court's initial review pursuant to 28 U.S.C. §§ 1915(e), 1915A.

In their motion, defendants argued that plaintiff failed to properly comply with the requirement that he exhaust available administrative remedies prior to the commencement of this suit. Dkt. No. 51. In response,

4

plaintiff claimed that although he attempted to grieve the underlying

incident, DOCCS personnel effectively thwarted his efforts. Dkt. No. 59.

On August 22, 2018, I issued a report in which I recommended that

defendants' motion be denied without prejudice due to "squarely conflicting

accounts" concerning whether plaintiff attempted to file or appeal multiple

grievances connected to the events that gave rise to this action. Dkt. No.

63 at 16.

Judge D'Agostino adopted my report and recommendation in its

entirety on September 12, 2018, Dkt. No. 66, and subsequently referred

the matter to me to conduct an evidentiary hearing, pursuant to *Messa v.*

*Goord*, 652 F.3d 305 (2d Cir. 2011), in order to determine whether plaintiff

did in fact exhaust available administrative remedies with respect to his

claim before filing suit and, if not, whether his failure to fulfill the

exhaustion requirement should be excused. Dkt. No. 69.

An evidentiary hearing was subsequently conducted by me on

January 30, 2019. *See generally* Dkt. No. 78. Plaintiff was represented at

that hearing by *pro bono* counsel assigned by the court.[2]  Following the

---

[2]     On October 17, 2018, Scott R. Swayze, Esq. was appointed as *pro bono*
counsel to plaintiff for the limited purpose of representing him at the January 30, 2019
exhaustion hearing. Dkt. No. 67. The court extends its thanks to Attorney Swayze for
his professional representation of plaintiff in this matter. The clerk will respectfully be
directed to issue an order terminating the assignment of Attorney Swayze as plaintiff's

hearing and the filing of the transcript, the parties submitted post-hearing

memoranda addressing the exhaustion issue, as well as a related

discovery issue. Dkt. Nos. 82, 83. The matter is now ripe for the issuance

of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and

Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P.

72(b).

III.    DISCUSSION

It is undisputed that plaintiff failed to file and pursue to completion a

grievance regarding defendants' alleged use of excessive force. Plaintiff

contends, however, that he should be excused from that obligation

because his administrative remedies were not effectively unavailable to

him at the relevant times. *See generally* Dkt. No. 82. First, he argues that

prison officials failed to adhere to the procedural safeguards for inmates

confined in a special housing unit ("SHU") as outlined in 7 N.Y.C.R.R. §

701.7. Dkt. No. 82 at 1-2. He further contends that although he attempted

to appeal his grievance, the DOCCS personnel employed to run the

inmate grievance program effectively frustrated those attempts. *Id.* 2-4.

Finally, he submits that certain aspects of Directive 4040 are so opaque

---

*pro bono* counsel.

6

and confusing that the grievance procedure became incapable of use under the circumstances presented. *Id.* at 4-5.

For their part, defendants argue that plaintiff failed to meet his burden of adducing evidence that would excuse his failure to exhaust, and that as a result, he should not be relieved of that obligation. *See generally* Dkt. No. 83. Defendants further maintain that plaintiff's testimony during the hearing was contradictory, inconsistent, and, at times, illogical. *See generally id.*

A.    Exhaustion of Remedies: Controlling Legal Principles

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is mandatory and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534

U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed to fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *see also Wilson v. McKenna*, 661 F. App'x 750, 752 (2d Cir. 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).[3]

In New York, the DOCCS has instituted a grievance procedure, designated as the Inmate Grievance Program ("IGP"), for use by prison inmates to lodge complaints regarding the conditions of their confinement. *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1, 701.5; *Williams*, 829 F.3d at 119. The

---

[3]    While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion " 'in a substantive sense,' " an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697-98 (2d Cir. 2004) (emphasis omitted)).

IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC")[4] have up to sixteen days after the grievance is filed to informally resolve the issue. 7 N.Y.C.R.R. § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. 7 N.Y.C.R.R. § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal.[5]  7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within

---

[4]     The IGRC is comprised of "two voting inmates, two voting staff members, and a non- voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

[5]     Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of the appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

9

seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of the appeal. 7 N.Y.C.R.R. § 701.5(d)(2)(i), (ii).

Where an inmate's grievance complains of employee harassment, the grievance is forwarded directly to the superintendent, bypassing the IGRC review. 7 N.Y.C.R.R. § 701.8(b), (c). The superintendent then has twenty-five days from the date of its receipt to render a decision. 7 N.Y.C.R.R. § 701.8(g). An inmate may appeal the superintendent's decision to the CORC within seven days of its receipt. 7 N.Y.C.R.R. § 701.8(h).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified period of time. 7 N.Y.C.R.R. § 701.5. Where the IGRC and/or superintendent do not timely respond, an inmate is permitted to appeal "to the next step." 7 N.Y.C.R.R. § 701.6(g)(2). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the

agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (internal quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (internal quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (internal quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA.[6] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what

---

[6]    According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

regulations or guidance materials may promise) it operates as a simple

dead end—with officers unable or consistently unwilling to provide any

relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative

scheme might be so opaque that it becomes, practically speaking,

incapable of use." *Id*. The Court explained that, "[i]n this situation, some

mechanism exists to provide relief, but no ordinary prisoner can discern or

navigate it." *Id.* The third scenario in which administrative remedies are

deemed unavailable to prisoners is when "prison administrators thwart

inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation." *Id.* at 1860.

B.    Burden of Proof with Respect to Exhaustion

Prior to addressing the parties' arguments, the court must determine

who, as between plaintiff and defendant, bears the burden of proof with

respect to the exhaustion defense. Because the failure to exhaust

administrative remedies is an affirmative defense, and not a pleading

requirement, *see Jones v. Bock*, 549 U.S. 199, 216 (2007); *Williams*, 829

F.3d at 123, the party asserting a failure to exhaust administrative

remedies typically bears the ultimate burden of proving its essential

elements by a preponderance of the evidence. *See, e.g.*, *Hamlet v.

Stotler*, No. 17-CV-0939, 2018 WL 2729263, at *5 (N.D.N.Y. Apr. 27,

2018) (Dancks, M.J), *report and recommendation adopted by* 2018 WL

2727875 (N.D.N.Y. Jun 6, 2018) (Sharpe, J.); *Soria v. Girdich*, No. 04-CV-

0727, 2007 WL 4790807, at *2 (N.D.N.Y. Dec. 6, 2007) (DiBianco, M.J.)

(citing *McCoy v. Goord*, 255 F. Supp. 2d 233, 247 (S.D.N.Y. 2003));

*Howard v. Goord*, No. 98-CV-7471, 1999 WL 1288679, at *3 (E.D.N.Y.

Dec. 28, 1999).

In *Nelson v. Plumley*, No. 12-CV-0422, 2015 WL 4326762 (N.D.N.Y.

Jul. 14, 2015) and *Bailey v. Fortier*, No. 09-CV-0742, 2012 WL 6935254

(N.D.N.Y. Oct. 4, 2012), *report and recommendation adopted by*, 2013 WL

310306 (N.D.N.Y. Jan. 25, 2013), I acknowledged the existence of an

ambiguity with respect to the appropriate burdens of production and

persuasion in the context of exhaustion. *Nelson*, 2015 WL 4326762, at *7;

*Bailey*, 2012 WL 6935254, at *5-*6; *see also Calloway v. Grimshaw*, No.

09-CV-1354, 2011 WL 4345299, at *5 & n. 5 (N.D.N.Y. Aug. 10, 2011),

*report and recommendation adopted* by 2011 WL 4345296 (N.D.N.Y. Sep.

15, 2011) (McAvoy, J.); *Murray v. Palmer*, No. 03-CV-1010 , 2010 WL

1235591, at * 4 & n. 17 (N.D.N.Y. Mar. 31, 2010). In particular, several

district court decisions, "while referencing the burden of proof applicable to

an affirmative defense, seem to primarily address an inmate's burden of

*production*, or of going forward, to show facts that would form the basis for

13

finding of unavailability, estoppel, or special circumstances, rather than speaking to the ultimate burden of *persuasion*." *Nelson*, 2015 WL 4326762, at *7 (emphasis in original); *see Bailey*, 2012 WL 6935254, at *6.

In *Nelson*, I ultimately determined that although the burden of production may shift to the plaintiff to demonstrate unavailability of the grievance process, the ultimate burden of proof remains with the defendant at all times. *Nelson*, 2015 WL 4326762, at *7; *Bailey*, 2012 WL 6935254, at *6; *see Puga v. Choto*, No. 11-CV-0070, 2014 WL 675824, at *5 (N.D.N.Y. Feb. 21, 2014) (McAvoy, J., *adopting report and recommendation by* Hummel, M.J.). While the *Nelson* and *Bailey* decisions were decided prior to *Ross*—and therefore applied the *Hemphill* factors—given that "unavailability" is a critical and central element of the legal standard outlined by both *Hemphill* and *Ross*, I see no reason to depart from my previous reasoning. *See Adams v. O'Hara*, No. 16-CV-0527, 2019 WL 652409, at *4 (N.D.N.Y. Feb. 15, 2019) (Suddaby, C.J.); *Coleman v. Nolan*, No. 15-CV-40, 2018 WL 4732778, at *4 n. 2 (N.D.N.Y. Oct. 2, 2018) (Baxter, M.J.); *Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) (Suddaby, C.J.). I conclude, therefore, that although the burden of proof on this affirmative defense remains with the defendant at

14

all times, the plaintiff can be required to produce evidence in order to defeat it. *See Smith*, 985 F. Supp. 2d at 284.

    C.   <u>Plaintiff's Failure to Disclose the January 19, 2015 Grievance During Discovery</u>

As will be seen, at the evidentiary hearing, plaintiff testified that he first attempted to file a grievance regarding defendants' alleged use of force on January 19, 2015, Exh. C-3, and a second, amended grievance concerning the incident on January 22, 2015, Exh. C-1. As a preliminary matter, defendants contend that plaintiff should be precluded from relying upon the January 19, 2015 grievance based upon his failure to produce it in response to a discovery request that plaintiff produce all grievances regarding the excessive force claim.

Federal Rule of Civil Procedure 37(c)(1) provides, in pertinent part, that

> [i]f a party fails to provide information . . . as required by Rule 26(a) or 26(e), the party is not allowed to use that information . . . to supply evidence . . . at a hearing . . . unless the failure was substantially justified or was harmless.

Fed. R. Civ. P. 37(c)(1); *see Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006). Despite the strict mandate of Rule 37(c)(1), however, the Second Circuit has rejected the view that the rule invariably requires

exclusion of evidence not previously disclosed. *MacDermid Printing Sols.*
*LLC v. Cortron Corp.*, 883 F.3d 172, 189 n. 75 (2d Cir. 2016) (citing
*Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297-98 (2d Cir. 2006)). As a
result, the impact of Rule 37 is moderated by the court's deliberation of
certain relevant factors to be considered when determining whether to
preclude evidence, including (1) the explanation given for failing to comply
with the operative discovery order; (2) the importance of the evidence at
issue; (3) whether prejudice would suffered by the opposing party in
having to respond to the new evidence; and (4) the possibility of a
continuance. *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d
955, 961 (2d Cir. 1997) (citing *Outley v. City of N.Y.*, 837 F.2d 587, 590-91
(2d Cir. 1988)).

Rule 37(c)(1) is further tempered by the overarching principle that
preclusion is viewed by the courts as a drastic remedy. Courts prefer,
whenever possible, to resolve disputes on their merits rather than on the
basis of procedural technicalities. *S.E.C. v. Euro Sec. Fund*, No. 98-CV-
7347, 2009 WL 2709316, at *4 (S.D.N.Y. Aug. 27, 2009) ("Strong public
policy favors resolving disputes on the merits.") (quoting *Pecarsky v.*
*Galaxiworld.com Ltd.*, 249 F.3d 167, 172 (2d Cir. 2001)). Accordingly, the
sanction of preclusion should be imposed only "in those rare cases where

a party's conduct represents *flagrant bad faith* and *callous disregard* of the Federal Rules of Civil Procedure." *Cornell Research Found., Inc. v. Hewlett–Packard Co.*, 01-CV-1974, 2006 WL 5097357, at *5 (N.D.N.Y. Nov. 13, 2006) (Peebles, M.J.) (citations omitted) (emphasis in original).

In this case, on June 12, 2017, plaintiff provided his Rule 26 disclosures to defendants' counsel, which included "[p]laintiff's grievance complaint pertaining to the incident on January 18, 2015, appeal to the [f]acility superintendent, [and] appeal to the [CORC.]" Dkt. No. 51-3 at 98-100; *see also* Dkt. No. 51-3 at 105 (cover letter dated January 25, 2015); *id.* at 106-107 (grievance dated January 22, 2015). Although plaintiff provided a number of documents to opposing counsel, he did not provide a copy of the January 19, 2015 grievance with his disclosures. *See generally* Dkt. No. 51-3 at 105-31.

Defendants' counsel then deposed plaintiff on September 8, 2017, at which point the parties went through plaintiff's disclosures in "painstaking detail[.]" Dkt. No. 83 at 83; *see also* Dkt. No. 83 at 179-272. At that time, plaintiff testified as follows:

> A. . . . . Because my original grievance, like I said, was written on the first, the 22nd of 2015. And then –
>
> Q. So January 22nd?

> A.    January 22nd, 2015.
>
> Q.    You wrote a January 22nd, 2015 one, that's
>        the first. And then you amended it on the 25th,
>        and that's the second?
>
> A.    Yeah.

Dkt. No. 83 at 218. In addition, the following colloquy occurred:

> Q.    Do you have any other documents with you
>        today that pertain to your complaint to
>        anything we talked about in any of these
>        letters?
>
> A.    Not besides the interrogatories – the
>        interrogatories and a couple of
>        communications from you.
>
> Q.    So everything we've already both seen.
>        Nothing n[e]w?
>
> A.    Nothing n[e]w.

Dkt. No. 83 at 252-53. At no time during his deposition did plaintiff mention

having drafted or filed a grievance on January 19, 2015. *See generally*

Dkt. No. 83 at 179-272.

Following plaintiff's deposition, defendants' counsel served a

demand for documents pursuant to Rule 34 of the Federal Rules of Civil

Procedure, requesting, *inter alia*, the following:

> Any grievances or correspondence plaintiff
> submitted for mailing while housed in the [SHU] at

18

> Marcy . . . regarding the alleged assault that
> occurred on January 18, 2015. This includes, but is
> not limited to, correspondence sent to the Inmate
> Grievance Review Committee ("IGRC"), the Inmate
> Grievance Program Supervisor, . . . the Marcy
> Superintendent, . . . [and] DOCCS Central Office
> Review Committee . . . .

Dkt. No. 83 at 279. In a letter dated January 17, 2018, plaintiff

acknowledged receipt of defendants' discovery demand, but indicated that

he was having difficulty responding due to problems with the mail and a

lack of funds. Dkt. No. 83 at 283. On February 12, 2018, plaintiff provided

documents responsive to defendants' demands, but once again failed to

provide a copy of the January 19, 2015 grievance. Dkt. No. 83 at 285-334.

Plaintiff also responded to defendants' motion for summary

judgment, which raised the exhaustion issue, on or about March 5, 2018.

Dkt. No. 59. In that response, plaintiff continued to adhere to his position

that the first grievance that he submitted in connection with defendants'

actions was filed on January 22, 2015. Dkt. No. 59-7 at 2.

When the matter proceeded to an exhaustion hearing before the

court on January 30, 2019, plaintiff testified, for the first time, that he

drafted and filed his first grievance on January 19, 2015. Tr. 6, 8, 40.[7]

---

[7]     The transcript of the evidentiary hearing, held on January 30, 2019, Dkt. No. 78,
will be cited as "Tr. _."

Plaintiff provided a copy of that grievance at the hearing. Exh. C-3; *see also* Tr. 64.

While plaintiff's failure to provide requested discovery, even as a *pro se* litigant, cannot be countenanced by the court, after a thorough and careful review of the record, as well as consideration of the relevant factors, *see Softel, Inc*, 118 F.3d at 961, I conclude that plaintiff did not display flagrant bad faith or callous disregard of the Federal Rules of Civil Procedure such that preclusion of the January 19, 2015 grievance would be appropriate. *Cornell Research Found., Inc.*, 2006 WL 5097357, at *5. Plaintiff's failure to provide the January 19, 2015 grievance appears to stem not only from his misapprehension regarding the scope of discovery, but also his disorganization, coupled with the realities of being confined to a prison setting. When the issue was addressed at the hearing, plaintiff indicated his mistaken belief that the January 19, 2015 grievance "[did not] exist" because he filed an "amended grievance" on January 22, 2015, effectively rendering the first one a nullity. Tr. 63-64. According to plaintiff, he believed that he did not need to produce the first grievance "because [he] wanted to start from my amended grievance" on January 22, 2015. Tr. 64.

This is not to say that the court is unsympathetic to defendants'

20

frustrations. There is, however, at least some reference to plaintiff having attempted to file another grievance prior to January 22, 2015, albeit this is more easily discerned with the benefit of hindsight. First, plaintiff's correspondence log indicates that he sent a grievance on January 19, 2015. Exh. P-1. Moreover, the January 22, 2015 grievance specifically references a "the first grievance[.]" Exh. C-1 at 2. Plaintiff's March 19, 2015 letter to Erin Pfendler, the IGP Supervisor for Marcy, also refers to a grievance filed on January 19, 2015. Exh. D-9. Although the January 19, 2015 grievance was undoubtedly encompassed by defendants' demand pursuant to Rule 34 of the Federal Rules of Civil Procedure, *see* Dkt. No. 83 at 275-80, and should have been disclosed by plaintiff to defendants well prior to the recent exhaustion hearing, when plaintiff failed to produce it, defendants' counsel did not follow up with a motion to compel its production.

I note, moreover, that there does not appear to be any significant prejudice inuring to defendants as a result of plaintiff's significant delay in disclosing the first grievance. As will be discussed more thoroughly further on in this report, the consideration of the January 19, 2015 grievance would not alter the court's ultimate conclusion with respect to exhaustion. Accordingly, I find no basis pursuant to Rule 37(c) to preclude the court's

consideration of the January 19, 2015 grievance, which was belatedly produced for the first time at the exhaustion hearing on January 30, 2019.

D.    Evidence Adduced at the Hearing

Plaintiff has been in the custody of the DOCCS since 1996. Dkt. No. 51-3 at 12. During the hearing, plaintiff evinced a fairly good—albeit occasionally incorrect—understanding of the procedure that governs inmate grievances. *See generally* Tr.; *see also* Dkt. No. 83 at 178-259.

Plaintiff testified that when he sends a correspondence, including a grievance, he utilizes carbon paper, retaining the carbon copy for his records. Tr. 38; *see also* Dkt. No. 83 at 208 ("I keep copies of everything[.]"), 224-25. While plaintiff generally maintains a contemporaneous list of the items that he sends, this matter is somewhat complicated by the fact that his correspondence log for the relevant time period appears to have been misplaced, resulting in plaintiff attempting to re-create the log from his memory. Tr. 5, 30-31, 38-39; *see also* Dkt. No. 83 at 208.

1.    Plaintiff's Efforts at Marcy

Plaintiff was confined to the SHU at Marcy immediately following the January 18, 2015 incident at issue in this case. Tr. 4. On January 19, 2015, he wrote a grievance regarding the incident. Tr. 4-6, 36, 59-60; *see*

22

*also* Exh. P-1; C-3. On the same day, an unidentified officer announced

mail rounds in the SHU, and plaintiff presented the grievance, along with

his other mail, to that officer. Tr. 6-7, 27-28; *see also* Tr. 101-102; Dkt. No.

83 at 207-08, 214, 222; *see also* Exh. P-1 ("Grievance to [g]rievance

department[.]"). The officer then placed those mail items in a "makeshift"

mailbox located in the SHU. Tr. 7, 27-28; *see also* Dkt. No. 83 at 208, 214.

Because plaintiff did not initially know the names of every officer

involved in the underlying incident, when he subsequently learned of their

identities, he drafted an "amended grievance" on January 22, 2015. Tr. 8,

10; *compare* Exh. C-1 (amended grievance) *with* Exh. C-3 (firsts

grievance). On January 25, 2015, plaintiff then drafted a "cover letter,"[8]

which stated:

> I am writing to enlighten the grievance department
> to do away with the grievance that was written on
> the date of 1/22/15.[9]  I have been enlighten[ed] by
> an officer here at Marcy, who shed some light on

---

[8]     At his deposition, plaintiff testified that the "cover letter" was affixed to the
amended grievance dated January 22, 2015, and those two items were mailed from
the SHU at the same time. Dkt. No. 83 at 217. At the exhaustion hearing, however,
plaintiff testified that the amended grievance was mailed on January 22, 2015, while
the cover letter was mailed separately on January 25, 2015. Tr. 31, 44-45, 54.
Nonetheless, the court notes that plaintiff's correspondence log fails to contain any
grievance-related entries on either January 22, 2015 or January 25, 2015. Exh. P-1;
*see also* Tr. 56.

[9]     Given plaintiff's other testimony that he wished to "start" the grievance process
based upon the amended grievance dated January 22, 2015, this date appears to be
an error on plaintiff's part, although it is not entirely clear.

> the officers who mistreated [me] on the date of
> 1/18/15. This is my reason for the amended
> grievance complaint.

Exh. P-3; *see* Tr. 9-10; *see also* Dkt. No. 83 at 213-15.

On February 1, 2015, when plaintiff's grievance was not acknowledged, plaintiff re-submitted the amended grievance to the IGP. Exh. C-2, Tr. 42-43, 49-50, 55; *see also* Exh 83 at 217-18. Plaintiff's correspondence log contains an entry for February 1, 2015, and indicates that he "sent [a] copy of [the] [a]mended grievance to [the] grievance department." Exh. P-1.

According to the applicable regulations, a member of the facility's IGP staff is required to "make rounds" of all SHU areas on a weekly basis. Tr. 90-92, 100; *see* 7 N.Y.C.R.R. § 701.7(c)(1). Erin Pfendler, the IGP Supervisor for Marcy, testified that although she generally made rounds once each week, shortly following her promotion to the position on January 15, 2015, she "was out with kidney stones" for several weeks. Tr. 100-01, 116-18, 127-28, 129. While the precise dates of Ms. Pfendler's absence were not narrowed down by the parties during the exhaustion hearing, plaintiff testified that during the three-week period that he was confined to the SHU at Marcy, he did not see any individuals from the IGRC. Tr. 45-46.

2.    Plaintiff's Efforts at Upstate

On February 6, 2015, the DOCCS began the process of transferring

plaintiff to Upstate, with an intervening stop at Downstate. Tr. 33; Exh. D-

1. Plaintiff was confined to Downstate when the twenty-one-day period

provided by 7 N.Y.C.R.R. § 701.5(a)(1) expired. Exh. D-1; *see also* D-3.

Plaintiff was ultimately received at Upstate on February 9, 2015. Exh. D-3.

On February 15, 2015, plaintiff attempted to follow up on his efforts

to file a grievance complaining of the use of excessive force. Tr. 33-34, 49-

50; *see* Exh. D-4; *see also* Dkt. No. 83 at 218-19. In a letter to the

grievance supervisor at Marcy, *inter alia*, plaintiff stated:

> This is the second time I sent my grievance
> complaint to the grievance department. The first
> time was on the date of February 1, 2015. I would
> like for my grievance complaint to be
> acknowledge[d] and processed.

Exh. D-4; *see* Exh. P-1 ("Wrote to IGP supervisor at Marcy about receiving

amended grievance"). Appended to the letter was a copy of plaintiff's

amended grievance dated January 22, 2015.[10]  D-4; *see also* Tr. 51-52.

Plaintiff conceded that this correspondence was sent beyond the twenty-

---

[10]    The court's use of the term "copy" here is not intended to suggest that plaintiff
provided a photostatic copy of the January 22, 2015 grievance with this letter. Rather, it
appears that plaintiff duplicated the January 22, 2015 grievance by hand. *Compare* D-4
*with* C-1; *see also* Tr. 38, 51-52.

one-day time frame provided by 7 N.Y.C.R.R. § 701.5(a)(1), but stated his

belief that a request for an extension pursuant to 7 N.Y.C.R.R. § 701.6(g)

was unnecessary because he had previously filed a timely grievance. Tr.

36-37. Two days later, plaintiff submitted another letter to the IGRC at

Marcy, in which he stated:

> I am in possession of grievance number
> 18810-15 and 18920-15.[11]  The first titled code 27,
> and the latter titled code 31[.] I am appealing this
> issue because I wrote an amended grievance
> complaint on the date of 2/1/15, which should have
> been a code (49) titled staff [mis]conduct.
>
> On the date of 2/16/15,[12]  I sent another copy
> of my amended grievance complaint written on the
> date of 1/22/15 to the IGP Supervisor. I want my
> original amended grievance complaint process[ed].
>
> I have enlighten[ed] the Inspector General that
> Marcy grievance committee chooses to ignore my
> original amended grievance. I am appealing the two
> grievances on the ground that I grieve[]d prison
> guards and a sergeant at Marcy for mistreatment,
> which is code (49), titled staff [mis]conduct. I did not

---

[11]    The record regarding these two grievances is far from clear. When plaintiff was
asked during the evidentiary hearing whether he "grieved other issues at Marcy
[during] this time period," plaintiff adamantly denied having done so. Tr. 27. Yet, this
correspondence appears to suggest that plaintiff filed two other grievances, which
apparently related to sick call or tier hearings, and those grievances were both
acknowledged and processed by the grievance department at Marcy. Exh. D-5; *see
also* Exh. 5-6. The parties have not provided copies of those two grievances to the
court.

[12]    This date appears to be in error and likely refers to plaintiff's February 15, 2015
correspondence. Exh. D-4; *see also* P-1.

> grieve an issue pertaining to sick call or tier
> hearings.

Exh. D-5; *see also* Tr. 34-35; P-1 ("Wrote IGRC").

According to Ms. Pfendler, it was only upon the receipt of plaintiff's

letters from February 15, 2015 and February 17, 2015 that her office was

alerted to the underlying incident by the plaintiff. Tr. 104-07, 114. Ms.

Pfendler testified that although plaintiff could have requested an extension

of time to file a grievance regarding the excessive force incident, he did

not expressly do so in his letter, and she believed that she had no

obligation to inform plaintiff that he could ask for one. Tr. 107-08, 121.

By memorandum dated February 23, 2015, Ms. Pfendler responded

to plaintiff on behalf of Justin J. Thomas, the superintendent of Marcy,

although plaintiff denied ever having received that response. Tr. 35, 105-

06, 126; *see* Exh. D-6. After addressing the two other, unrelated

grievances, Ms. Pfendler stated:

> You proceed to reference an addendum alleging
> staff misconduct that occurred January 18, 2015.
> You indicate at the top of the grievance 'written
> 2/15/15.' Additionally, the letter is postmarked
> 2/17/2015. Pursuant to [7 N.Y.C.R.R. § 701.5(a)(1)],
> . . . [a]n inmate must submit a complaint to the clerk
> within twenty[-]one (21) calendar days of an alleged
> occurrence[.]' . . . [T]his is untimely, and therefore,
> not grievable.

27

Exh. D-6.

In a letter dated March 9, 2015 to Superintendent Thomas, plaintiff attempted to file an appeal regarding the amended grievance dated January 22, 2015.[13]  Exh. D-7; Tr. 109. In response to that attempt, by memorandum dated March 16, 2015, Ms. Pfendler indicated that her office had no record of having received an amended grievance from plaintiff dated January 22, 2015. Exh. D-8; Tr. 109-10. Moreover, she noted that the only correspondence that the office possessed regarding the underlying incident was dated beyond time limits provided by Directive 4040. Exh. D-8; Tr. 109-10. Ms. Pfendler did not construe plaintiff's letter as requesting an extension. Tr. 110-11.

By letter dated March 19, 2015, plaintiff again wrote to Ms. Pfendler. Exh. D-9. In that letter, he claimed to have filed a first, initial grievance on January 19, 2015, and a second, amended grievance on January 22, 2015, and then noted that he handed the amended grievance to an SHU officer on February 1, 2015. Exh. D-9. He further indicated that he wrote the February 15, 2015 letter because the "Marcy grievance committee was

---

[13]    Although the subject heading of the letter states, "[a]ppeal grievance written on [February 15, 2015]," the body of the letter states, "[t]he grievance that I am appealing was written on [January 22, 2015]." Exh. D-7.

not replying to [his] [a]mended grievance." Exh. D-9. In a memorandum

dated March 25, 2015, Ms. Pfendler again responded and indicated that

the officer "did not receive an 'amended' grievance complaint prior to

[February 17, 2015]." Exh. D-10; Tr. 111.

In response, by letter dated March 31, 2015, plaintiff stated:

> I understand that your office did not receive my
> [f]ormal grievance [dated January 19, 2015], as
> well, as my 'amended' grievance [dated January 22,
> 2015]. As I stated in my March 19, 2015 epistle to
> you written by my hand, I gave my mail including
> grievances to the officer working in [the] SHU by
> handing the officer my mail conducting his
> mailrounds.

Exh. D-11 (errors in original). Plaintiff further asserted that Ms. Pfendler

did not understand his letters, and reiterated that he timely filed both the

first, initial grievance and the second, amended grievance. Exh. D-11; Tr.

112. By memorandum dated April 3, 2015, Ms. Pfendler responded that

plaintiff's grievance was untimely, but that if he wished to pursue the issue

further, he could "do so by filing a grievance at [his] current facility." Exh.

D-12; Tr. 112. Plaintiff answered by indicating he was merely attempting to

exhaust his grievance. Exh D-13. In further reply, Ms. Pfendler reiterated

that all grievances should be filed at plaintiff's current facility. Exh. D-14.

Plaintiff testified that as he understood the grievance procedure,

when the superintendent failed to respond to a grievance within twenty-

five days, he could proceed to appeal the grievance directly to the CORC.

Tr. 49. In that regard, by letter dated May 18, 2015, plaintiff attempted to

do just that. Exh. D-15. In that letter, plaintiff stated,

> . . . I am sending you my Grievances, and
> Grievance, Grievance appeal that was written to the
> superintendent. The dates are shown on the top of
> each appeal.
>
> . . . [T]he statute states "matters not decided
> within the time limits may be appealed to the next
> step."

Exh. D-15 (any errors in original). Tr. 76. Karen Bellamy, the Director of

the IGP, responded to plaintiff's letter, stating:

> Directive #4040 . . . provides inmates with an
> orderly, fair, simple and expeditious method of
> resolving grievances pursuant to the Correction
> Law. The Directive makes no provision for an
> inmate to refer grievances directly to [the CORC].
>
> You are advised that you must submit your
> grievance directly to the IGRC at the facility.
> Therefore, your documents are being returned to
> you, and will not retain a copy in this office.

Exh. D-16; Tr. 75-77, 92-93; 130.

E.    Analysis of Exhaustion

The parties do not seriously dispute that plaintiff failed to obtain a

final, administrative adjudication of his excessive force grievance from the

30

CORC prior to the commencement of this suit. Tr. 74-75; *see* D-2.

Accordingly, I recommend a finding that defendants have met their burden

of proving, by a preponderance of the evidence, that plaintiff failed to

exhaust the administrative remedies provided under the IGP prior to the

filing of his complaint on or about November 28, 2018. Dkt. No. 1. This

recommendation leaves one further inquiry for the court: whether or not

the IGP was "actually available" to plaintiff in light of the specific

circumstances of this case. *Williams*, 829 F.3d at 119 (*Ross*, 136 S. Ct. at

1858-59).

Under the DOCCS IGP procedure, plaintiff was initially required to

file a grievance with the IGRC within twenty-one calendars days of

January 18, 2015 incident—in this case, no later than February 8, 2015.

*See* 7 N.Y.C.R.R. § 701.5(a)-(b); *see also* 7 N.Y.C.R.R. § 701.8. As

inmate confined to the SHU for the majority of that twenty-one-day time

frame, plaintiff was required to rely on prison officials to transmit his

grievance to the IGP.

In that respect, plaintiff credibly testified that he attempted to file (or

re-file) a grievance on January 19, 2015, January 22, 2015, January 25,

2015, and February 1, 2015; all of those attempts were well within the

twenty-one-day period for filing a grievance. Exh. C-1 (January 22, 2015);

C-2 (February 1, 2015); C-3 (January 19, 2015); P-3 (January 25, 2015).[14]

On each of thsse four occasions, he passed his grievances, along with

other correspondence, through his cell's "feed-up hatch" to an officer who

had announced "mail rounds" to the SHU. Tr. 6-7, 27-28. That officer then

placed all of his correspondence within a single, "makeshift" mailbox on

each occasion.[15]  Tr. 7, 27-28. Plaintiff testified that he did not know how

prison personnel distributed grievances or correspondence after leaving

his possession. Tr. 28. None of these four grievances were acknowledged

or processed—or apparently even received—by the grievance officials at

Marcy. While Ms. Pfendler testified that her office did not receive any of

those four grievances, "there is no record evidence that explains or

suggests why they were not processed or what happened to them after

they were retrieved by the unidentified DOCCS corrections officer."

*Nelson*, 2015 WL 4326762, at *8.

Complicating matters for plaintiff is that although the regulations

---

[14]    In light of plaintiff's testimony that his correspondence log had been recreated from his memory—rather than a contemporaneous creation—the court does not find the lack of entries regarding grievances on certain days to be particularly compelling. *See* Exh. P-1.

[15]    It is unclear why the SHU at Marcy did not maintain a specific IGP deposit box pursuant to the governing regulations. *See* 7 N.Y.C.R.R. § 701.7(b).

contain a safety net allowing an inmate confined to the SHU "direct

access" to the grievance program once per week, enabling an inmate to

address precisely this very situation, *see* 7 N.Y.C.R.R. § 701.7(c), Ms.

Pfendler, the IGP employee who would ordinarily conduct those rounds,

was absent during the critical time for plaintiff to file a timely grievance and

she did not designate a back-up to conduct weekly rounds in the SHU

during her absence. Tr. 116-17, 127-28. According to plaintiff, no IGRC

staff members made rounds during his SHU confinement at Marcy. Tr. 11.

Further impeding plaintiff's grievance efforts is the fact that as the time

period for filing a timely grievance was nearing a close, he was transferred

out of Marcy to Upstate, with several intervening days spent at Downstate.

*See Woodward v. Lytle*, No. 16-CV-1174, 2018 WL 4643036, at *4

(N.D.N.Y. Sept. 27, 2018) (quoting *Williams*, 829 F.3d at 126).

Frustrating plaintiff's efforts even further is the fact that upon his

attempt to re-submit his previous grievance through the Marcy grievance

program, *see* Exh. D-4; D-5, he was informed that his attempts were

untimely under the twenty-one-day rule, *see* Exh. D-6; D-8. Although

plaintiff believed that he did not need to request an extension in light of his

prior, timely attempts to grieve the use of force, DOCCS personnel failed

to inform him that he was within the forty-five-day period during which he

could have been granted an extension of the filing deadline, and DOCCS personnel did not deem his correspondence as requesting such an extension. Exh. D-6; D-8. When plaintiff indicated that he wished to proceed with an appeal, his appeal was not forwarded to the CORC, and DOCCS personnel adhered to their position that plaintiff's attempts to grieve were untimely. Exh. D-8; D-9. When plaintiff persisted in outlining the history of the efforts that he had undertaken to timely file a grievance, *see* Exh. D-9, D-11, D-13, he was instructed to file "a grievance at your current facility." Exh. D-10; D-12, D-14.

Although defendants argue that plaintiff was under a duty to appeal the non-response to his grievance, their reliance on pre-*Williams* caselaw in this specific instance is misplaced in light of the fact that plaintiff's initial, timely grievances were not filed. *See, e.g., Cicio v. Wenderlich*, No. 13-CV-195S, 2017 WL 1437206, at *5-6 (W.D.N.Y. Apr. 24, 2017) (granting summary judgment against plaintiff for failure to exhaust when he failed to appeal a grievance for which **he received a receipt confirming that it was filed**, but for which he never received a response on the merits of his grievance), *aff'd*, 714 F. App'x 96, 97 (2d Cir. 2018) (affirming grant of summary judgment, and distinguishing *Williams*, which found the DOCCS grievance process "unavailable" when an inmate's grievance was **never**

34

**filed**). Even if plaintiff technically could have appealed, as the Second

Circuit observed, "the regulatory scheme providing for that appeal is 'so

opaque' and 'so confusing that . . . no reasonable prisoner can use [it].' "

*Williams*, 829 F.3d at 124 (quoting *Ross*, 136 S. Ct. at 1859); *see also*

*Coleman*, 2018 WL 4732778, at *11-*12 (citing cases and discussing the

application of *Williams*). As the Second Circuit succinctly observed in

*Williams*,

> [I]f the grievance had never been filed, the
> superintendent would never have received it and
> the timeline for her to provide a response within 25
> days "of receipt of the grievance" would never have
> been triggered. In turn, the textual provision
> allowing a grievant to appeal to the CORC would
> never have come into effect. Accordingly, the
> regulations give no guidance whatsoever to an
> inmate whose grievance was never filed.

*Williams*, 829 F.3d at 124 (internal citations omitted); *see also Trahan v.*

*Capozzola*, No. 12-CV-4353, 2017 WL 9512406 (E.D.N.Y. Jun. 26, 2017)

("[T]he Court sees nothing in the governing regulations or handbook

which addresses how to pursue administrative remedies when a

grievance is unfiled and unanswered.").

In this case, plaintiff credibly met his burden of production by

documenting his efforts to file grievances, pursuant to the appropriate

DOCCS and facility-specific procedures, and defendants failed to meet

their ultimate burden by a preponderance of the evidence. The general evidence submitted regarding the mail and grievance procedures at Marcy was insufficient to overcome plaintiff's evidence, notwithstanding his lack of knowledge as to how his grievances might have been diverted after they left his possession. Defendants' evidence is largely consistent with plaintiff's claim that, for whatever reason, the timely grievances that he attempted to submit while confined to the SHU at Marcy were not filed. The absence of any official records of plaintiff's initial attempts to grieve the incident comports with plaintiff's assertion that once he handed a grievance through the feed-up hatch in the SHU, it was out of his possession and it was not filed.

Although plaintiff had a well-developed understanding of the grievance process, his familiarity with the standard IGP regulations could hardly make his situation less "opaque" or render administrative remedies somehow more available to him. *Williams*, 829 F.3d at 124. If anything, plaintiff's understanding of how the IGP process functions in the ordinary course bolsters his claim that the usual process did not unfold in this circumstance by suggesting that the filing failure did not result from plaintiff's own ineptitude. There is no evidence in the record that the absence of any grievances at Marcy regarding the incident is attributable

to plaintiff, and it is readily apparent that plaintiff's persistent efforts to follow up, re-file, and appeal the grievances were consistently frustrated by DOCCS officials.

In sum, based upon the unique circumstances of this case, and without detracting from the importance of satisfying the PLRA's exhaustion obligation and fulfilling the procedural requirements of the DOCCS IGP, I recommend that the court find the IGP was not "actually" available to plaintiff, and that he should therefore be excused from the exhaustion requirement.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

The parties in this action do not dispute that plaintiff did not exhaust available administrative remedies prior to commencing this action. However, plaintiff has produced credible evidence that he made multiple attempts to file a timely grievance with respect to the underlying excessive force incident, but that those grievances were never processed despite his repeated inquiries. It is therefore hereby respectfully

RECOMMENDED that the court conclude that because the remedies under the Inmate Grievance Program were rendered unavailable to plaintiff with regard to grievances complaining of an alleged assault by defendants on January 18, 2015, plaintiff's remaining claims in this action

are not barred by the Prison Litigation Reform Act based upon a failure to exhaust administrative remedies.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[16]  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:    April 22, 2019
          Syracuse, New York

---

[16]    If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

38